**EDGERTON v. UNITED STATES.**
**No. 49525.**

United States Court of Claims.
Jan. 5, 1954.

Robert C. Handwerk, Washington, D. C., for plaintiff.

John R. Franklin, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

WHITAKER, Judge.

On June 29, 1947, plaintiff entered into a contract with the Veterans' Administration, an agency of the defendant, for the education and training of veterans as private pilots, commercial pilots, and flight instructors. The term of the contract was from July 1, 1947, to February 29, 1948.

On August 11, 1947, the Veterans' Administration wrote plaintiff that "the training of veterans now enrolled with you is suspended effective the close of business August 12, 1947," pending an investigation by the Civil Aeronautics Administration of reports indicating "that maintenance practices in your institution may not be sufficient to adequately protect the veteran in training." On the same date Mr. Brisbin, who was the Chief of the Vocational, Rehabilitation and Education Division in the Regional Office of the Veterans' Administration in San Antonio, Texas, sent two of his subordinates to plaintiff's flying field with instructions to entirely separate from a training status the veterans then under training at plaintiff's school.

Upon learning of this, plaintiff telephoned Mr. Brisbin, who informed him that complaints had been received that the aircraft used in the school were not airworthy. Whereupon, plaintiff agreed that he would cease operations pending the outcome of the investigation by the Civil Aeronautics Administration if Mr. Brisbin would agree not to separate the students from their training status, called "interrupting." Mr. Brisbin said he would agree to this if this agreement was put in writing. Plaintiff, at the dictation of the representatives of the Veterans' Administration then in his office, wrote them on August 12, 1947, as follows:

"Confirming my telephone conversation of this date with Mr. Arthur W. Brisbin, Chief, Training Section, I do state that I have ceased operations as of close of business as of this date, August 12, 1947, and will not reopen operation until authorized by the proper authorities of the Veterans' Administration, and I also state that my records are available to representatives of the Veterans' Administration and any other authorized agency, for inspection."

On August 11, 1947, the representatives of the Civil Aeronautics Administration made an inspection of plaintiff's aircraft and found them to be in airworthy condition, although they did find that two of the planes used by plaintiff at Freer, Texas, showed evidence of a lack of routine maintenance and upkeep. Plaintiff was advised of this. The Civil Aeronautics Administration so reported to the Veterans' Administration on August 14, 1947.

This report was received in the Regional Office of the Veterans' Administration on August 17, 1947; but, even so, plaintiff was unable to secure permission to resume training. He telephoned Mr. Brisbin a number of times, without results. He then enlisted the aid of his attorney, and he and his attorney, as well as Colonel Pearcy, the Director of Flying at the Laredo Municipal Airport, went to San Antonio on August 15, 1947, to interview Mr. Brisbin. Mr. Brisbin informed them that the only thing hold-

ing up permission to reopen training was the lack of this report showing that the airplanes were in airworthy condition, but he stated that this report had not been received.

Still not hearing from Mr. Brisbin, plaintiff telephoned the inspector of the Civil Aeronautics Administration on August 18, 1947, who informed him that the report had been sent in to the Veterans' Administration. On the same day plaintiff went back to San Antonio to see Mr. Brisbin, accompanied by his attorney and Colonel Pearcy. Before calling on Mr. Brisbin, however, these gentlemen called on Mr. Burns, the inspector of the Civil Aeronautics Administration, who had examined plaintiff's airplanes, and requested him to telephone Mr. Brisbin to inquire if the report had been received. Mr. Brisbin made the astonishing reply that the Veterans' Administration was not ready to receive the report.

On the day before, the report had been received at the Regional Office, but had not arrived in the office of Mr. Brisbin.

Two days later, plaintiff and his attorney and Colonel Pearcy again went to the Regional Office of the Veterans' Administration in San Antonio. This time they saw Mr. Harlan, who was the head of the Regional Office. Mr. Harlan, talked with Colonel Pearcy and plaintiff's attorney, but not with plaintiff. He told these gentlemen that the suspension of training at the school, on the ground that plaintiff's airplanes were not airworthy, was a ruse to permit the defendant to investigate a report that plaintiff had defrauded the Government of a considerable sum of money. He stated that he was requesting the Federal Bureau of Investigation to investigate this report, and was holding up permission for plaintiff to resume operations until after a report from the Federal Bureau of Investigation had been received.

Defendant takes exception to this finding of the Commissioner, but the testimony to this effect stands uncontradicted. Defendant did not put Mr. Harlan on the stand. Colonel Pearcy had died before the taking of testimony was begun.

On August 22, 1947, a special agent of the Federal Bureau of Investigation called at plaintiff's school and made an investigation of his books and records; but plaintiff was denied permission to inspect his report, and the agent declined to tell him what it contained, but referred him to the United States District Attorney.

Plaintiff was unable to get in touch with the United States Attorney until November 1947. At that time the United States Attorney informed plaintiff's attorney that the Federal Bureau of Investigation's report disclosed a few discrepancies in favor of the Government and a few in favor of plaintiff, but that the net amount of such discrepancies amounted to only about $60, and that, therefore, there would be no prosecution.

The suspicion of fraud was, therefore, without foundation.

When plaintiff's school was closed on August 12, 1947, the Veterans' Administration was indebted to it in the sum of approximately $30,000; but these funds were withheld pending conclusion of the investigation by the Federal Bureau of Investigation. It was not until after the United States Attorney had advised the Veterans' Administration that it would not seek an indictment against plaintiff, that the amount due was remitted. This was in December, 1947.

Plaintiff had borrowed money from a bank in Laredo to finance the purchase of airplanes to be used in giving flying lessons. This note was payable in installments. On August 12, 1947, the plaintiff owed the bank a balance of approximately $30,000 and plaintiff was without funds to pay the debt. This fact, presumably, together with his failure to secure permission to reopen the school after receipt of the favorable report on the condition of his airplanes, and the apparent unwillingness of the trainees to wait around indefinitely for the school to reopen, induced plaintiff to lease his aircraft and operating facilities on September 9, 1947, to one E. A. Brown. Since under the regulations of the Civil Aeronautics Administration not more than

one air agency certificate could be issued for the same aeronautical facilities and equipment, plaintiff surrendered his certificate, in order that a new one might be issued in lieu thereof to Mr. Brown. Such a certificate was issued to Mr. Brown, and the Veterans' Administration on October 29, 1947, entered into a contract with him for the education and training of veterans.

Mr. Brisbin notified the State Approval Agency that plaintiff had leased his equipment and had surrendered his certificate; and as a result thereof that agency withdrew its approval of plaintiff's school as an institution for the training of veterans.

In the meantime, and before plaintiff had leased his equipment to Mr. Brown, the Veterans' Administration requested the Civil Aeronautics Administration to give them a statement that it felt that the safety of the veteran trainees in plaintiff's school was adequately safeguarded, although this Administration had previously notified the Veterans' Administration that it had found that the plaintiff's airplanes were airworthy, which was the investigation the Civil Aeronautics Administration had been requested to make. The Civil Aeronautics Administration replied reaffirming its former statement that their inspection of plaintiff's aircraft led them to believe that they were airworthy.

Mr. Brisbin then made a verbal request of the Civil Aeronautics Administration to make a further investigation of plaintiff's facilities, and this was done. The Civil Aeronautics Administration found five alleged infractions of Civil Aeronautics Administration regulations, all of which, however, occurred prior to the date of plaintiff's present contract with the Veterans' Administration, except one. The Civil Aeronautics Administration then filed a complaint with the Civil Aeronautics Board asking a revocation of plaintiff's certificate, but only presented to the Board one alleged infraction after the contract in suit, and one before. The evidence does not support the allegation of any infraction after the contract in suit, but it did show one infraction before the contract in suit, which was that an airplane had been used on one occasion when the brakes were not functioning.

The record discloses no justification for requiring plaintiff to suspend operations. The reports of irregularities received by the Regional Office were untrue.

The Veterans' Administration had no right to close down plaintiff's school on a mere accusation of irregularities. It had no right to do so unless these allegations were in fact true, or at least unless there was probable cause to believe them to be true. To say the least, permission to resume operations should have been given as soon as the report that the airplanes were airworthy had been received by the Veterans' Administration. This was on August 17, 1947.

Moreover, the accusations made were not made in good faith; confessedly, they were a ruse to give the Veterans' Administration an opportunity to investigate a rumor that plaintiff had defrauded the Government, a rumor that turned out to be without any foundation in fact.

The conduct of the Veterans' Administration in this case was indefensible; it was a flagrant breach of plaintiff's rights under his contract. That contract gave the defendant the right to terminate it on 60 days' written notice, but they did not follow this course; instead, they asserted the false claim that the airplanes were not airworthy, as a ruse to permit investigation of an equally false rumor that plaintiff had defrauded the Government, and on this pretext they suspended his right to operate, and refused to give him permission to resume, even after they knew that their purported accusation was false.

The stipulation between the parties shows that the daily cost to plaintiff for the operation of his school was $252, and that the daily income under the contract was $398.55, or a profit of $146.55 for each day of operation. At the time of the suspension the contract had 201 days

to run. Plaintiff is, therefore, entitled to recover the amount of $29,456.55.

There is, however, to be deducted from this amount whatever profit plaintiff realized from the lease of his aircraft and operating facilities to E. A. Brown.

Judgment will be suspended until the incoming of a stipulation by the parties showing this amount, or, in the absence of a stipulation within a period of 30 days, the case will be remanded to a Commissioner to take proof and report thereon.

It is so ordered.

JONES, Chief Judge, and MADDEN, and LITTLETON, Judges, concur.